IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JASON F.,

             Plaintiff,

       v.                               Civil Action No.
                                         3:19-CV-1355 (DEP)

ANDREW SAUL, Commissioner of Social
 Security,

             Defendant.


_____


<u>APPEARANCES</u>:                      <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

LACHMAN & GORTON LAW FIRM    PETER A. GORTON, ESQ.
1500 East Main St.
P.O. Box 89
Endicott, NY 13761-0089

<u>FOR DEFENDANT</u>

HON. ANTOINETTE L. BACON      JESSICA RICHARDS, ESQ.
Acting United States Attorney     Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are

cross-motions for judgment on the pleadings.[1]  Oral argument was heard

in connection with those motions on December 23, 2020, during a

telephone conference conducted on the record. At the close of argument, I

issued a bench decision in which, after applying the requisite deferential

review standard, I found that the Commissioner's determination resulted

from the application of proper legal principles and is supported by

substantial evidence, providing further detail regarding my reasoning and

addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench

decision, which has been transcribed, is attached to this order, and is

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is

GRANTED.

---

[1]    This matter, which is before me on consent of the parties pursuant to 28
U.S.C. § 636(c), has been treated in accordance with the procedures set forth in
General Order No. 18. Under that General Order once issue has been joined, an action
such as this is considered procedurally, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

2)      The Commissioner's determination that the plaintiff was not

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge


Dated:      January 8, 2021
            Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JASON F.,

                    Plaintiff,

vs.                                        3:19-CV-1355

ANDREW SAUL,
Commissioner of Social Security,

                    Defendant.

-------------------------------------------------------x

          *Transcript of DECISION* - December 23, 2020

              HONORABLE DAVID E. PEEBLES

        United States Magistrate Judge, Presiding


              <u>APPEARANCES</u> (by telephone)

For Plaintiff:      LACHMAN, GORTON LAW FIRM
                    Attorneys at Law
                    1500 East Main Street
                    Endicott, NY 13761
                      BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    15 New Sudbury Street
                    Boston, MA 02203
                      BY:  JESSICA RICHARDS, ESQ.




              *Eileen McDonough, RPR, CRR*
        *Official United States Court Reporter*
                *P.O. Box 7367*
            *Syracuse, New York 13261*
                *(315)234-8546*

*Decision - 19-cv-1355 - 12/23/2020*                  2

1          THE COURT:  Thank you, Counsel, for your excellent

2     presentations.  I enjoyed working with you.  I found this to

3     be an interesting case.

4          The plaintiff commenced this action pursuant to 42,

5     United States Code, 405(g) to challenge an adverse

6     determination of the Commissioner of Social Security finding

7     that plaintiff was not disabled at the relevant times and,

8     therefore, ineligible for the disability insurance benefits

9     for which he applied.

10          The background is as follows:  Plaintiff was born

11     in April of 1981.  He is currently 39 years of age.

12     Plaintiff was 34 years old at the onset of his alleged

13     disability in January of 2016.  Plaintiff lives in a house in

14     Vestal, New York, with his mother and two dogs, which he

15     cares for.  Plaintiff's mother has significant medical

16     issues.

17          Plaintiff stands approximately 6-foot 4-inches in

18     height, and at various times has weighed between 400 and

19     450 pounds; 450 pounds appearing at page 371 of the

20     Administrative Transcript.

21          Plaintiff has a high school education and one

22     semester of college education.  He dropped out of college for

23     medical reasons.  While in school he was in regular classes.

24     As a senior in high school, plaintiff suffered a trauma when

25     his father died in his arms in his senior year in 2000.  He

1 | required counseling after that event.

2 |      Plaintiff has a driver's license.  Plaintiff

3 | stopped working apparently in June of 2016, according to

4 | page 45 of the Administrative Transcript, his hearing

5 | testimony, and his statement to Dr. Moore.  He testified and

6 | has stated that he has looked for and applied for work since

7 | that time; the reference is page 48 and 236 of the

8 | Administrative Transcript.  Plaintiff has held several

9 | positions in the past.  He was a health care driver from

10 | April of 2001 to April of 2009.  In the summer of 2008 he was

11 | a corrections officer.  In the summer of 2009 he worked as an

12 | auto detailer.  In the winter of 2009 to the spring of 2010

13 | he was a supervisor in a fire and water restoration service

14 | office.  And from April of 2011 until June of 2016, he worked

15 | as a paper delivery person driving in his car for up to two

16 | hours delivering papers.  According to plaintiff's statement

17 | to Dr. Moore, that employment ended when his contract expired

18 | and the newspaper downsized.  He also stated to Dr. Moore,

19 | however, that he could no longer physically carry out the

20 | responsibilities of that job.

21 |      Physically, plaintiff suffers from back pain that

22 | radiates into his legs bilaterally and results in numbness

23 | and tingling.  He suffered from a pars defect, which is also

24 | known as spondylolysis, which was surgically repaired on

25 | March 31, 1999 through an open reduction and fixation with a

1    bone graft.  He also suffers from an L5-S1 lumbar issue.

2    There was a magnetic resonance imaging testing of his lumbar

3    spine on June 30, 2016, that appears at page 257, which notes

4    that, "The MRI does show L2-L3 severe disc space collapse and

5    near auto-fusion anteriorly.  There is no significant

6    stenosis.  There is also evidence of advanced discogenic

7    changes L5-S1 without herniation.  The remaining disc spaces

8    appear to be within normal limits."  There is also notation

9    on that page that plaintiff ambulates without difficulty and

10   that the plaintiff was advised to lose weight and is not a

11   surgical candidate.

12        The plaintiff also underwent an X-ray of his lumbar

13   spine on April 24, 2018, that's at page 366 through 368,

14   which reflected mild L5-S1 disc space narrowing.  A pelvic

15   X-ray also taken on that date, at page 367, appears normal.

16   The plaintiff underwent nerve blocks on June 27, 2016 and

17   September 25, 2016.

18        Physically, he also suffers from bilateral knee

19   issues, worse on the left side.  Plaintiff underwent physical

20   therapy from January of 2017 to February of 2017, for his

21   knees primarily.  The records of that physical therapy are

22   reflected in 7F.  He also suffers from obesity,

23   hyperlipidemia, hypertension, he experienced a broken hand in

24   or about 2001, allergies, and neck pain.  Plaintiff does not

25   require any assistive devices.

1        Mentally, plaintiff suffers from depressive

2   disorder, panic disorder, and anxiety.  The Agency's

3   consultative examiner, Dr. Mary Ann Moore, also diagnosed

4   plaintiff as suffering from post-traumatic stress disorder,

5   or PTSD, although I note that plaintiff's treating

6   psychologist, Dr. Lister, doesn't appear to have listed that

7   as a recognized diagnosis.

8        Plaintiff does obtain primary medical care from UHS

9   Primary Care, principally through Physicians Assistant Gina

10  Callahan and Nurse Practitioner Cori Pane.  He has also

11  treated with Orthopedic Associates, Dr. Eric Seybold, who saw

12  him in 1998 and 1999 concerning the pars defect, and again

13  four times between April 13, 2016 and September 15, 2016 for

14  plaintiff's back issues, lumbar back issues, lower lumbar

15  back issues, I should say.  He also has treated with Oakdale

16  Psychology Associates, primarily with Dr. Michael Lister, a

17  psychologist, since January 16, 2017, and he receives

18  cognitive behavioral therapy from Dr. Lister.

19       Plaintiff has been prescribed various medications

20  over time, including Gabapentin, Meloxicam, Zoloft,

21  Neurontin, Vistaril, and medical marijuana.

22       Plaintiff has a fairly robust range of activities

23  of daily living, reflected at pages 261 and 270 to 271 of the

24  Transcript, as well as in his hearing testimony.  The

25  plaintiff is capable of showering, he can dress, cook, clean,

1  do laundry, care for and walk his dogs, read, socialize with

2  friends, visit family, use the internet.  He plays video

3  games.  He races radio controlled cars with friends.  And he

4  is a competitive pistol target shooter and a member of a

5  shooting club.  Plaintiff never smoked.

6          Procedurally, plaintiff applied for Title II

7  benefits under the Social Security Act on September 5, 2016,

8  alleging an onset date of January 20, 2016.  At page 170 he

9  alleges disability based on a back injury, overweight, bad

10 knees, back pain, nerve damage to the back, and nerve damage

11 to the right leg.  A hearing was conducted on August 3, 2018,

12 by Administrative Law Judge David Romeo with a vocational

13 expert to address plaintiff's application for benefits.

14         On November 8, 2018, ALJ Romeo issued an

15 unfavorable decision.  That became a final determination of

16 the Agency on October 9, 2019, when the Social Security

17 Administration Appeals Council denied plaintiff's request for

18 review.  This action was commenced on November 4, 2019 and is

19 timely.

20         In his decision, ALJ Romeo applied the familiar

21 five-step sequential test for determining disability.  He

22 first noted preliminarily that plaintiff was insured through

23 December 31, 2020.

24         At step one, the Administrative Law Judge concluded

25 that plaintiff has not engaged in substantial gainful

1   activity since January 20, 2016, but noted that whether

2   plaintiff's paper route was viewed as SGA would not affect

3   the outcome, and he further noted that he has considered the

4   ability to perform that work in crafting his residual

5   functional capacity, or RFC, determination.

6            At step two, ALJ Romeo concluded that plaintiff

7   does suffer from severe impairments that impose more than

8   minimal limitation on his ability to perform work functions,

9   including degenerative disc disease and degenerative joint

10  disease of the lumbar spine, status post pars defect surgery,

11  anxiety, panic disorder, depressive disorder, morbid obesity,

12  and cannabis use disorder.

13           At step three, ALJ Romeo concluded that plaintiff's

14  conditions do not meet or medically equal any of the listed

15  presumptively disabling conditions set forth in the

16  Commissioner's regulations, specifically considering listing

17  1.04 and the other 1.00 listings related to the spine, 11.00,

18  14.00, 12.04, 12.06, and 12.15.  He also considered

19  plaintiff's obesity in accordance with Social Security Ruling

20  02-01p.

21           The Administrative Law Judge next determined that,

22  notwithstanding his conditions, plaintiff retains the ability

23  to perform sedentary work, with the exception that physically

24  he can occasionally balance, stoop, kneel, crouch, crawl,

25  climb ramps and climb stairs; cannot climb ropes, ladders or

1   scaffolds.  In light of his mental conditions, plaintiff can

2   understand, remember and carry out simple instructions and

3   make simple work-related decisions, and can tolerate a low

4   level of work pressure defined as work not requiring

5   multitasking, detailed job tasks, significant independent

6   judgment, very short deadlines, teamwork in completing job

7   tasks, or more than occasional changes in the work setting.

8          Applying that RFC finding at step four, the

9   Administrative Law Judge concluded plaintiff is incapable of

10  performing his past relevant work as a home restoration

11  service cleaner and as a driver.

12         At step five, the Administrative Law Judge

13  initially noted that if plaintiff could perform a full range

14  of sedentary work, the Medical-Vocational Guidelines, or the

15  so-called Grids, would direct a finding of no disability.

16  Because of additional limitations restricting the job base on

17  which the Grids are predicated, he resorted to the testimony

18  of a vocational expert and concluded based on that testimony

19  that, notwithstanding his limitations, plaintiff is capable

20  of performing available work in the national economy, and

21  cited representative occupations, including elections clerk,

22  credit card call out operator, surveillance monitor, and tube

23  operator.  And, therefore, found that the plaintiff was not

24  disabled at the relevant times.

25         The Court's function in this case is to determine

1   whether correct legal principles were applied and the

2   resulting determinations are supported by substantial

3   evidence, which is defined as such relevant evidence as a

4   reasonable mind would find sufficient to support a

5   conclusion.  The Second Circuit has noted in *Brault versus*

6   *Social Security Administration Commissioner*, 683 F.3d 443,

7   that this is an exacting and highly deferential standard.

8   And the Court went on to note in *Brault* that under this

9   substantial evidence standard, once an ALJ finds a fact, that

10  fact can be rejected only if a reasonable fact-finder would

11  have to conclude otherwise.

12          In this case, the plaintiff has raised four basic

13  contentions, some of which are interrelated.  He contends

14  that the residual functional capacity is not supported by

15  substantial evidence in that he cannot meet the sitting

16  requirements and the work pace and attendance demands of

17  work.

18          Secondly, he challenges the rejection of the

19  treating source opinions of Dr. Seybold and Dr. Lister, and

20  challenges the mental components of the residual functional

21  capacity finding as well.

22          And lastly, plaintiff argues that the step five

23  determination is flawed due to the errors in the residual

24  functional capacity and the hypothetical that was posed to

25  the vocational expert.

1          The first task, as you know, in a case of this

2   nature is for the Administrative Law Judge to determine

3   plaintiff's residual functional capacity, something that is

4   pivotal to the remainder of the analysis.  The claimant's RFC

5   represents a finding of the range of tasks he is capable of

6   performing notwithstanding his impairments, and is informed

7   by consideration of all of the relevant medical and other

8   evidence; 20 CFR Section 404.1545(a)(3).

9          Of course, as is true of any portion of the

10  disability finding, the residual functional capacity must be

11  supported by substantial evidence.  The plaintiff was found

12  capable of performing a full range of sedentary work subject

13  to additional limitations.  Sedentary work is defined under

14  20 CFR Section 404.1567 as involving "lifting no more than

15  10 pounds at a time and occasionally lifting or carrying

16  articles like docket files, ledgers, and small tools.

17  Although a sedentary job is defined as one which involves

18  sitting, a certain amount of walking and standing is often

19  necessary in carrying out job duties."  The regulation has

20  been clarified by a subsequent ruling such that sedentary

21  work involves periods of standing or walking for no more than

22  two hours of an eight-hour workday and sitting up to a total

23  of approximately six hours in a similar period; SSR 96-9p and

24  SSR 83-10.

25          In this case, the residual functional capacity

1   finding was explained by the Administrative Law Judge at

2   pages 27 through 30 of the Administrative Transcript.  In his

3   summary, which appears at 30 to 31, the Administrative Law

4   Judge contends and finds that the RFC is supported by the

5   opinions of Dr. Jenouri, Dr. Moore, Dr. Seybold, Dr. Lister,

6   Dr. Juriga, objective medical evidence, and activities of

7   daily living.

8           In arriving at his opinion, the Administrative Law

9   Judge was required to evaluate opinions of two treating

10  sources, Dr. Seybold and Dr. Lister.  Ordinarily the opinion

11  of a treating physician such as those two regarding the

12  nature and severity of an impairment is entitled to

13  considerable deference provided it is supported by medically

14  acceptable clinical and laboratory diagnostic techniques and

15  is not inconsistent with other substantial evidence.  Such

16  opinions are not controlling, however, if they are contrary

17  to other substantial evidence in the record, including the

18  opinions of other medical experts, and conflicts that arise

19  in the form of contradictory medical evidence in a record are

20  resolved properly by the Commissioner under *Veino versus*

21  *Barnhart*, 312 F.3d 578.

22          In this case, there are two opinions from

23  Dr. Seybold.  The first was issued on January 13, 2017, and

24  appears at pages 293 to 295 of the Administrative Transcript.

25  Significantly, there is no question that it is more limiting

1    than the residual functional capacity finding.  It opines

2    that plaintiff can sit for only two hours in an eight-hour

3    workday and stand and walk for one hour each.  It also opines

4    that plaintiff would be absent more than -- well, it says

5    tree times a month, but I'm thinking three times a month is

6    what that should read, at page 295.

7           There was a second opinion issued by Dr. Seybold on

8    June 9, 2017.  It appears at page 317 and 318.  It was on a

9    form that apparently came from an office in Broome County,

10   Office of Adult Career and Continuing Education Services,

11   Vocational Rehabilitation, and it does contain somewhat

12   arguably contradictory information, both internally and

13   certainly as opposed to the January 2017 opinion.  It

14   indicates that plaintiff is capable of working up to 25 to 40

15   hours per week but is temporarily unemployable for four to

16   six weeks.  On the second page it indicates in the verbal

17   summary, plaintiff has moderate spinal stenosis and he is

18   unable to stand, sit, walk or drive for extended periods of

19   time.  That is quantified in a check-box grid to indicate

20   that plaintiff is limited to 50 percent walking, standing,

21   sitting, and other physical exertional actions.

22           The Administrative Law Judge discussed

23   Dr. Seybold's opinions at pages 29 to 30 and gave some weight

24   to the second believing that it shows improvement.  The

25   Administrative Law Judge properly resolved the conflict

1  between the two, although, as I indicated, I'm not certain on

2  what Dr. Seybold based his finding, his apparent finding of

3  improvement, since he only saw the plaintiff four times and

4  all four of those were in 2016.  Nonetheless, the

5  Administrative Law Judge also found he was persuaded by the

6  plaintiff's activities outside of work.  The discussion of

7  Dr. Seybold's opinions is somewhat lacking in that it does

8  not specifically lay out, as most Administrative Law Judge

9  decisions don't, the so-called *Burgess* factors that need to

10 be evaluated, but the Second Circuit has noted that in

11 *Estrella versus Berryhill,* 925 F.3d 90, from the Second

12 Circuit 2019, that a slavish recitation of the *Burgess*

13 factors, if it is lacking, it is not necessarily fatal if

14 upon review of the entirety of the decision it is clear to

15 the Court that the treating source rule was not violated, and

16 I make that finding in this case.

17         Dr. Jenouri, Dr. Gilbert Jenouri, examined the

18 plaintiff and issued an opinion on October 14, 2016.  That

19 appears at 261 to 266 of the Administrative Transcript.  He

20 found that plaintiff has moderate to marked restriction in

21 walking, standing, and sitting long periods, bending, stair

22 climbing, lifting, and carrying.  The Administrative Law

23 Judge gave great weight to Dr. Jenouri's opinions at page 28

24 to 29, except with regard to sitting, and he explained that

25 he rejected that limitation on sitting as inconsistent with

*Decision - 19-cv-1355 - 12/23/2020*                        14

1   Dr. Seybold's description of plaintiff's improved condition

2   and with the claimant's narration of his pattern of work and

3   social activity.  And these are, of course, proper

4   considerations.

5           I note that the determination with regard to the

6   physical RFC is supported by not only the medical source

7   statement of Dr. Seybold and Dr. Jenouri, but also treatment

8   notes.  On December 7, 2016, plaintiff reported no pain in

9   his lumbar area; that's at 282.  On January 3, 2017, he also

10  reported no pain; that's at 277.  On February 7, 2017, he

11  reported no pain; that's at 351, and stated that he had begun

12  going to the gym.  On March 27, 2017, he reported no pain;

13  that's at page 348.  On June 27, 2017, reported no pain;

14  that's at 337 to 338.  On April 13, 2017, he noted that he

15  had experienced some pain but it had improved; that's at

16  page 341.  He also reported receiving relief from injections;

17  that's at page 329.

18          He stated to Dr. Jenouri at page 261 that pain was

19  caused by activities.  It was noted that he drove to deliver

20  papers six months after his alleged onset date for two hours

21  or more.  He had a very robust set of activities of daily

22  living, more so than most plaintiffs that we see, quite

23  honestly, and most involve sitting.  The plaintiff underwent

24  conservative treatment and was found not to be a candidate

25  for surgery.  I couldn't find any records of physical

1   therapy, although he was referred to physical therapy or aqua

2   therapy on October 9, 2017, by I believe PA Callahan, that's

3   at page 334.  And on November 20, 2017, he reported going to

4   physical therapy, which was helping; that's at page 324.

5         When it comes to sitting, by the way, I do note

6   that the Second Circuit has cautioned that, quote, "The

7   regulations do not mandate the presumption that all sedentary

8   jobs in the United States require the worker to sit without

9   moving for six hours, trapped like a seat-belted passenger in

10  the center seat on a transcontinental flight."  *Halloran*

11  *versus Barnhart*, 362 F.3d 28, 33 (Second Circuit 2004).

12        So, in sum, I find that the physical aspects of the

13  residual functional capacity finding is supported by

14  substantial evidence.

15        Turning to the mental, the treating psychologist,

16  Dr. Michael Lister, issued an opinion on June 6, 2017.  It

17  appears at pages 319 to 321 of the Administrative Transcript.

18  He lists an Axis I diagnosis as panic disorder and

19  unspecified depressive disorder.  He assigns a global

20  assessment of functioning, or GAF, score of 60, which under

21  the DSM-4, which of course has been superseded by the DSM-5

22  which no longer utilizes the GAF scale, nonetheless, it's at

23  the top of the 51 to 60 category which is defined as,

24  "moderate symptoms (e.g. flat affect and circumstantial

25  speech, occasional panic attacks) or moderate difficulty in

1   social, occupational, or school functioning (e.g. few

2   friends, conflicts with peers or co-workers)."

3          The opinion of Dr. Lister indicates only one rating

4   of poor in ability in the category of work and social

5   abilities, and that is to perform at a consistent pace

6   without an unreasonable number and length of rest periods.

7   It indicates at page 321 that plaintiff is ready to begin

8   employment and competitive employment, although it does check

9   the box for part time.

10          The Administrative Law Judge discussed Dr. Lister's

11   opinions at page 30.  Dr. Lister clearly qualifies as a

12   treating source.  But once again, I believe that the opinion

13   of Dr. Lister and the weight that it is given is adequately

14   explained on page 30 of the Administrative Law Judge's

15   decision and I don't find any violation of the treating

16   source rules.  I believe that the requirements of *Estrella*

17   have been met.

18          The mental condition of the plaintiff is also

19   addressed by Dr. Mary Ann Moore, who examined the plaintiff

20   on October 19, 2016.  Her opinions appear at page 368 to 373

21   of the Administrative Transcript.  In her medical source

22   statement she finds some limitations, including significantly

23   moderate limitations in regard to appropriately dealing with

24   stress, relating adequately with others, making appropriate

25   work decisions, and maintaining a regular work schedule.  The

1   opinion is given great weight, but the limitation on schedule

2   is rejected and explained as follows, "The moderate

3   limitations Dr. Moore describes concerning maintaining a

4   regular work schedule are not well supported in light of the

5   claimant's hearing testimony about his varied daily

6   activities and continuing job search, and consequently are

7   not adopted."

8           The opinion of Dr. S. Juriga from November 1, 2016

9   was also considered and given some weight at page 30 of the

10   Administrative Transcript.  Dr. Juriga's opinions are

11   included in Exhibit 1A, which appears at 71 through 81 of the

12   Administrative Transcript.  In his opinion, Dr. Juriga finds

13   that plaintiff does not have any limitations in the domains

14   of restriction of activities of daily living, difficulties in

15   maintaining social functioning, and repeated episodes of

16   decompensation, each of extended duration, and finds only

17   mild difficulties in maintaining concentration, persistence

18   or pace.

19           Of course, plaintiff's RFC as found by the

20   Administrative Law Judge does not mirror exactly any one of

21   the varied medical opinions in the record, but of course

22   there is no requirement that it do so.  In this case, I find

23   that the analysis of the Administrative Law Judge was proper

24   and the portions of the medical opinions that were not

25   adopted were adequately explained.  I was persuaded that this

*Decision - 19-cv-1355 - 12/23/2020*                    18

1    is a case very similar in that regard to *Medina versus*

2    *Commissioner of Social Security*, 2020 WL 7418981.  It was an

3    opinion, a summary order issued by the Second Circuit on

4    December 18, 2020.

5             The step five argument, of course, that was made by

6    the plaintiff is dependent on a finding that the residual

7    functional capacity determination was not supported by

8    substantial evidence, and I found that it was supported by

9    substantial evidence.  The hypothetical posed to the

10   vocational expert mirrored the RFC finding.  I, therefore,

11   conclude that the Commissioner has carried his burden at step

12   five and that the resulting determination was proper and

13   supported by substantial evidence.

14            I will, therefore, grant judgment on the pleadings

15   to the defendant and order dismissal of plaintiff's

16   complaint.

17            And leave you with a wish that you have a happy,

18   healthy holiday season and New Year.  Let's pray that 2021

19   brings us back to normal.  Thank you.

20                  *              *              *

21

22

23

24

25

C E R T I F I C A T I O N

        I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter